The People of the State of New York, Plaintiff, *v.* Harry Van Arsdale, Jr., and Others, Defendants.

County Court, Queens County, February 24, 1941.

*Charles P. Sullivan, District Attorney [Joseph V. Loscalzo, Assistant District Attorney,* of counsel], for the plaintiff.

*Louis Waldman, Harold Stern* and *Cornelius DeLoca,* for the defendants.

COLDEN, J. This is a motion brought by the district attorney of the county of Queens for a special, or so-called, " Blue Ribbon " jury, to try an indictment which charges the defendants with the crimes of conspiracy, coercion, malicious mischief, assault, resisting a public officer in the discharge of his duty, unlawful assembly, remaining present at place of a meeting originally lawful after it had adopted an unlawful purpose and riot. The moving papers state that the grounds for this application are, *first,* the great number of defendants; *second,* the fact that union officials and union activities are involved; *third,* that considerable time will be consumed in the selection of the jurors; *fourth,* that the subject-matter of the indictment and the issues to be tried have been so widely commented upon that an ordinary jury cannot without delay and difficulty be obtained to try the issues, and the efficiency and impartial administration of justice will be advanced by the trial of such issues by a special jury.

This application is made under section 749-aa of article 18-B of the Judiciary Law. Said section provides, among other things, " Where, upon such application, it appears to the court that by reason of the importance or intricacy of the case, a special jury is required, or that the subject-matter of the indictment or the issue to be tried has been so widely commented upon that the court is satisfied that an ordinary jury cannot without delay and difficulty be obtained to try such issue, or that for any other reason the due, efficient and impartial administration of justice in the particular case would be advanced by the trial of such an issue by a special jury, the court to which the motion is made may make an order directing that such trial be had by a special jury, and such trial shall be had accordingly." The affidavit submitted contains conclusions in confoimity with the section quoted, but facts to sustain such conclusions are not found in the affidavit, nor were they discussed during the argument of this motion.

Counsel for the defendants vigorously oppose the granting of this motion and cite in opposition, among other things, the views of the Hon. Herbert H. Lehman, the distinguished Governor of our State, in his message to the Legislature, wherein he said, " I recommend that Blue Ribbon juries be abo'ished * * * The use of special or so-called Blue Ribbon juries is not consonant with the preservation of the constitutional right to a trial by a jury of peers. It is at war with our basic concepts of a democratic society."

Counsel for the defendants also cite Reports of The Judicial Council, the members of which include some of the most distinguished jurists and members of the bar in the State of New York. In its Fifth Annual Report (p. 42), The Judicial Council, among other things, said,

" The Council's report pointed out in addition that the legal requisities prescribed for the special juries are substantially the same as the legal requisities prescribed for a general or ordinary jury.

" In consequence, as might have been expected, such a special juror inevitably feels superior and such a special jury system becomes distinctly un-American and not consonant with a trial by one's peers."

This court has the most profound respect for the opinions of the Governor of our State, and of the Judicial Council, but in passing upon this application this court must determine this motion under the statute as it now exists.

So far as the regular trial jurors of Queens county are concerned, this court has had abundant opportunity to observe the excellent quality of our jurors. The understanding which they have of their responsibilities as jurors, and the general correctness of the verdicts which they render, are evident day after day here in our County Court. The observations of Governor Lehman and of the Judicial Council as to the improvement of the quality of the panels of jurors are confirmed by the day by day results of the trials, and certain it is that the granting of a motion for special panel should be reserved for cases where the facts and circumstances before the court upon the application clearly indicate the propriety thereof. In cases, for instance, involving indictments for murder in the first degree, experience indicates that, generally speaking, a special panel is preferable for two reasons, *first*, that the preliminary examination by the county clerk has eliminated all of those prospective jurors who are opposed to the imposition of the death penalty in any case, and thereby the trial is started with a group of prospective jurors who are not biased as to the law of our State; *second*, by reason of such elimination, the selection of· the trial jury does not involve the protracted discussion of the death penalty by those who are being examined and by those who are conducting the examination, with the result that an atmosphere is created in the courtroom, and in all probability, a belief in the minds of those who are finally accepted, that the law of our State with reference to the penalty for murder in the first degree is not approved by a considerable number of fine citizens. One would be naive indeed to believe that the discussion of the penalty has

not practically eliminated murder in the first degree from the indictment, after a large number of prospective jurors have expressed their disapproval of the law in this respect. It may well be that the death penalty should be eliminated. But if it is to be eliminated, it should be done by legislative enactment, and not by the creation of an adverse psychological atmosphere by able counsel in the selection of a jury. Section 420 of the Code of Criminal Procedure provides that the trial judge, must, if requested, inform the jury that " *in determining the question of guilt they must not consider the punishment.*" (Italics mine.) Thus jurors are supposed to arrive at their verdict without considering the question of punishment, yet in the examination of prospective jurors from a regular panel, the question of punishment is made of paramount importance in considering the acceptability of a juror. Special circumstances may also indicate the need for a special panel in cases other than murder in the first degree, but if such an application is to be granted, it should only be upon a convincing factual presentation within the provisions of section 749-aa of the Judiciary Law.

In the instant case no such considerations apply; nothing contained in the affidavits, nor in the indictment itself, nor in the arguments of counsel, brings this case within the provisions of the Judiciary Law. Here the issues to be tried apparently grow out of differences between employer and employees involving accusations against union officials and union activities. The counts in the indictment are said to grow out of incidents arising as result of those differences. Here, if ever, a jury representative of a fair cross-section of the people in our county should constitute the triers of the facts, and it is the opinion of this court that our regular jury panels will furnish such a jury. Any other standard of juror qualification in a case of this character would be repugnant to a sense of fair play and of our belief in equal justice before the law. The selection of a trial jury from our regular panel will insure to these defendants, and to the People, the right to a trial by a jury, in accordance with our constitutional provisions. The motion is denied.